IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| JOHNNIE LEE FOSTON, | ) | CV 11-36-M-DWM-JCL |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| WARDEN SAM LAW; ATTORNEY GENERAL OF THE STATE OF MONTANA, | ) ) ) | |
| | ) | |
| Respondents. | ) | |

On March 8, 2012, Magistrate Judge Jeremiah C. Lynch entered Findings and Recommendations as to Johnnie Lee Foston's petition for writ of habeas corpus under 28 U.S.C. § 2254. Judge Lynch recommended this Court deny Foston's petition for relief, grant the respondent's motion to dismiss, and deny Foston a Certificate of Appealability. (Doc. 36). Foston timely objected (doc. 39) and thus is entitled to *de novo* review of those findings or recommendations to

1

which he objects. 28 U.S.C. § 636(b)(1). The portions of the Findings and Recommendation not specifically objected to are reviewed for clear error. *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981).

Only one issue is before this Court. Judge Lynch determined that Foston's Sixth Amendment right to confront his accusers was not violated on the grounds that the admitted testimony was not hearsay. Foston objects to this finding and, in the alternative, urges the Court to grant him a Certificate of Appealability on this question. While I agree with Judge Lynch on the merits, in my view there is enough of a reasonable question to issue a Certificate of Appealability.

## I. Statement of Facts

Judge Lynch's factual findings are thorough and adopted in full. Some facts are reiterated here by way of explanation.

On January 9, 2008, Johnnie Lee Foston went to trial on a three counts of criminal distribution of dangerous drugs in violation of Montana Code Annotated § 45-9-11 (2005). All three counts involved controlled buys of cocaine by a confidential informant.

At issue is the trial testimony of Detective Scott Newell. Newell electronically monitored and recorded certain transactions between Foston and the

confidential informant. At trial, he testified that the "conversation[s]" he listened to were "consistent with [his] understanding of a drug deal." (Trial Tr. at 312:11–13.) He did so without disclosing what was said by the informant.

This testimony was critical to the jury's verdict. After submission they asked about the meaning of constitutional confrontation. The informant did not testify, and neither the defendant nor the jury had the opportunity to listen to the recordings of the conversations themselves.[1] In closing argument, Foston's trial counsel drew attention to these facts and reminded the jury of the constitutional right to confront one's accusers. While deliberating, the jury asked, "Definition of facing your accuser, how does that apply to the confidential informant?" (Trial Tr. at 401:15–17.) They were instructed that the question asked was a legal matter for the court to decide and that they had been given all the laws necessary to make their factual determination.

Other facts presented at trial did not directly connect Foston to any specific drug transactions. Officers testified they saw Foston meet and talk with the informant. Newell testified that he saw Foston accept cash from the informant in the second and third buys, but that he did not see Foston with drugs. No other

---

[1]The trial court denied the attempts by Foston's trial counsel to compel the production of the recordings or the disclosure of the informant's identity.

3

officer saw Foston with either money or drugs, and no one saw Foston carry anything to or from the transactions or give anything to the informant. Nor was the informant searched prior to any of the transactions to ensure that she was not in possession of cocaine prior to meeting with Foston. Besides Newell's characterization of the conversations as "consistent with [his] understanding of a drug deal," there was no proof that Foston knew drugs were involved in his transactions with the informant. *See State v. Brown*, 755 P.2d 1364, 1367 (Mont. 1988) (citation omitted). Later, marked money, a firearm, and cocaine were found at the home of Foston's co-defendant, Smith, where Foston had gone during one of his meetings with the informant. Smith testified that Foston sometimes gave him large sums of money to "hold," as well as "a couple of eight-balls, nothing big or anything like that" to use recreationally together. He also testified that the two ounces of cocaine found at his house had been left there by Foston. Smith believed but did not have personal knowledge that Foston bought and resold cocaine. Newell also testified that the informant was not revealed because of fear of retaliation, testimony that could lead to the jury drawing an inference that Foston was also dangerous.

    The jury acquitted Foston of the first transaction with the confidential informant and convicted him of the second and third transactions.

## IV. Analysis

The Sixth Amendment Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990); *Murdoch v. Castro*, 365 F.3d 699, 792 (9th Cir. 2004). "One longstanding purpose of cross examination is to expose to the fact-finder relevant and discrediting information 'revealing . . . ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand,' motives that cast doubt on the honesty of the witness's testimony." *Murdoch*, 365 F.3d at 792 (citation omitted). Under *Crawford v. Washington*, the Confrontation Clause specifically forbids the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." 541 U.S. 36, 53–54 (2004).

Foston did not have an opportunity to cross-examine the confidential informant here, and there is no evidence the informant was unavailable. Applying

5

a narrow *Crawford* reading, Detective Newell's testimony violated the Confrontation Clause only if it conveyed out-of-court statements offered to prove the truth of the matter asserted, *id.* at 59 n. 9, and if those statements were testimonial, *id.* at 51, 68; *see also Davis v. Washington*, 547 U.S. 813, 824–25 (2006) ("It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause."). A broader reading of Foston's arguments and the Confrontation Clause may also be appropriate based on clearly established Supreme Court precedent. Judge Lynch's recommendations are adopted based on a narrow reading of *Crawford* and definition of hearsay, but Foston is granted a Certificate of Appealability because a reasonable jurist might read both questions more broadly.

**A.  *Crawford* analysis - Was the officer's testimony hearsay?**

The first question is whether Newell's testimony related an out- of-court statement offered to prove the truth of the matter asserted. Judge Lynch concluded it did not "[b]ecause [Newell] did not relay the words or assertive conduct of the informant":

> Newell did not quote, paraphrase, or summarize the informant's words or, for the most part, Foston's. He did not describe conduct arguably intended by informant to be assertive. He did not say the conversations

6

actually were a drug deal. Newell only stated his opinion.

(Doc. 36 at 15–16 (footnote omitted).) Judge Lynch is correct. The jurors could not infer specific assertions made by the informant from Newell's characterization of the conversations, and any statements the jury might infer would be either party admissions or not offered to prove the truth of whatever matter they asserted. Because the testimony is not hearsay, it is unnecessary to reach the question of whether the statements characterized were testimonial.[2]

As Judge Lynch recognized (*id.* at 16 n. 9), testimony that conveys an absent informant's statements, or the substance of an absent informant's statements, without saying what they were is still hearsay. In *Ocampo v. Vail*, the Ninth Circuit held that "nothing in *Crawford* addressed, or undermined, the established principle that in-court testimony could trigger Confrontation Clause concerns by describing, but not quoting, an out-of-court statement that would

---

[2] However, the statements of a confidential informant engaging in a state-directed sting operation do appear to be testimonial in nature based on Supreme Court and Ninth Circuit standards. Statements may be testimonial if "declarants would reasonably expect [them] to be used prosecutorially" or the statements were "made under circumstances which would lead an objective witness reasonably to believe that the statement[s] would be available for use at a later trial." *Crawford*, 541 U.S. at 52; *see also United States v. Orozco-Acosta*, 607 F.3d 1156, 1163 (9th Cir. 2010) (suggesting courts consider three factors: 1) were the statements made solely for an evidentiary purpose, 2) were they made to aid a police investigation, and 3) were these the only reasons for the statements being made?).Though the statements were made to the defendant, the informant knew his words were being monitored and recorded as part of law enforcement's investigation of Foston. *See also United States v. Cromer*, 389 F.3d 662, 673–74 (6th Cir. 2004).

otherwise come within the Confrontation Clause." 649 F.3d 1098, 1108–09 (9th Cir. 2011). In that case, two police officers testified about statements that Vasquez—a witness who did not testify at trial—had made during their investigation into a shooting. *Id.* at 1112. Though the first detective did not provide specific details about Vasquez's statements, he "did convey some critical substance about those statements" by broadly stating that Vasquez had corroborated the testimony of an alleged co-conspirator, other witnesses, and the detectives' suspicions. *Id.*; *see testimony at* 1102. The jury was able to infer from the testimony that Vasquez told the police certain suspects were not present at the crime, that Ocampo was present at the crime, and that an alleged co-conspirator participated in the shooting, thus making his testimony more believable. *Id.* at 1112. In addition to this testimony, a second detective testified that "two additional witnesses besides [the co-conspirator] implicated the defendant," *id.*, and the prosecutor argued that Vasquez "confirmed" the co-conspirator's testimony. *Id.* at 1105. The court concluded that these statements "bolstered the state's weak case against Ocampo, and flatly contradicted Ocampo's alibi defense":

> [W]hat matters is that [Vasquez] did not appear at trial; his statements thus should not have been admitted at all, whether in "outline," summary, unavoidable inference, or verbatim; and, given the weakness

8

of the two other key trial witnesses and of the physical evidence, we necessarily have "grave doubt" that without Detectives Ringer and Webb's accounts of what Vasquez said, the result would have been a conviction of Ocampo.

*Id.* at 1117. Accordingly, the court held that the admission of the officers' testimony about Vasquez's statements violated the Confrontation Clause.

The Ninth Circuit also noted that an outline or description of out-of-court statements may be even more damaging to a defendant who does not have the opportunity to cross-examine the declarant than a direct quotation would be:

> Where the government officers have not only "produced" the evidence, but then condensed it into a conclusory affirmation for purposes of presentation to the jury, the difficulties of testing the veracity of the source of the evidence are not lessened but exacerbated. With the language actually used by the out-of-court witness obscured, any clues to its truthfulness provided by that language—contradictions, hesitations, and other clues often used to test credibility—are lost, and instead, a veneer of objectivity conveyed.
>
> Labeling such digested testimony as a mere "outline" of, rather than a description or summary of, the substance of out-of-court statements cannot reasonably alter these conclusions or toss the testimony outside the reach of the Confrontation Clause as interpreted in *Crawford*.

*Id.* at 1109. Ultimately, "out of court statements admitted at trial are 'statements' for the purpose of the Confrontation Clause . . . if, fairly read, they convey to the jury the substance of an out-of-court testimonial statement of a witness who does not testify at trial." *Id.* at 1109–10.

Other Circuits agree that testimony "summarizing—or 'outlining'—the substance of out-of-court testimonial statements, directly or in a way from which the nature of the statement can be readily inferred" is subject to the Confrontation Clause. *Ocampo*, 649 F.3d at 1111 (internal quotation marks and citation omitted). In *United States v. Meises*, an officer answered affirmatively when asked if a person he had interviewed had said anything to him that changed whom he suspected or that prompted the defendants' arrests. 645 F.3d 5, 21 (1st Cir. 2011). The First Circuit found that "a reasonable jury could only have understood that [the interviewee] had identified appellants as participants in the drug deal." *Id.* It held that the government could not "evade the limitations of the Sixth Amendment and the Rules of Evidence by weaving an unavailable declarant's statements into another witness's testimony by implication." *Id.* at 22. Similarly, in *United States v. Silva*, the Seventh Circuit held that "[a]lowing agents to narrate the course of their investigations, and thus spread before juries damning information that is not subject to cross-examination ... would eviscerate the constitutional right to confront and cross-examine one's accusers." 380 F.3d 1018, 1020 (7th Cir. 2004) (finding a Confrontation Clause violation where an officer summarized conversations he listened to between a confidential informant and an alleged third-party supplier that implicated a person named "Juan," which was the

10

defendant's first name). *See also Favre v. Henderson*, 464 F.2d 359, 364 (5th Cir. 1972) (finding the Confrontation Clause was implicated when a testifying officer "did not relate the words his informants had used, [but] clearly conveyed by implication that they had told him something to incriminate [the defendant]"); *Taylor v. Cain*, 545 F.3d 327, 335 (5th Cir. 2008); *United States v. Reyes*, 18 F.3d 65, 71 (2d Cir. 1994) (rejecting the government's argument that an officer's summary of a conversation only conveyed his "opinion" on what he had heard and determining that the capacity for prejudice was great because the officer's testimony addressed the most important issue at trial, the involvement of the defendant in the crime).

Like in *Ocampo* and the other cases cited above, the jury here could "readily infer" from Newell's testimony the broad "substance" or "nature" of the conversations. *Ocampo*, 649 F.3d at 1111. The testimony also "clearly conveyed by implication" that the informant, through her actions and words, implicated Foston in the drug transactions. *Id.*; *Favre*, 464 F.2d at 364. In this sense, a jurist might reasonably label Newell's testimony hearsay, recognizing it as a "conclusory affirmation" of whatever was actually said. *Id.* at 1109.

However, unlike in the cases discussed above, the jury was not able here to draw factual inferences about specific assertions the informant made. It is

11

doubtful the confidential informant said, "You just sold me cocaine," or, "This is a drug deal." The confidential informant might have said anything, *see e.g. United States v. Sureff*, 15 F.3d 225, 227 (2d Cir. 1994) (in which the jury listened to taped phone conversations allegedly consistent with drug transactions that were "disjointed and occasionally incomprehensible," involving terms such as "'tickets,' 'the man,' 'real estate taxes,' 'cars,' 'houses,' 'papers,' 'licenses,' 'catering,' 'seafood platters,' 'the bank,' 'paperwork,' 'three-star meals,' and 'the rent'"), or merely asked a question. Though the "substance" of the conversation might have been incriminating, the assertions of the informant may not have been. As Judge Lynch noted, "the jury had absolutely no idea what the informant said or thought" (doc. 36 at 17), and without an out-of-court statement or assertion, there is no hearsay.

The testimony was not hearsay for a second reason. Even if the jury was able to infer a conversation that sounded like a drug deal, courts have frequently held that recordings or retellings of such conversations do not violate the Confrontation Clause under *Crawford*. In these cases, courts have held that the defendant's statements are admissions by a party-opponent under Federal Rule of Evidence 801(d)(2)(A), and the informant's statements are not offered to prove the truth of the matter asserted, but merely provide context for the defendant's

admissions.  *See e.g. United States v. Valerio*, 441 F.3d 837, 844 (9th Cir. 2006) (concerning an admitted recording of a conversation about a firearm sale to an informant who claimed to be a felon); *United States v. Tolliver*, 454 F.3d 660, 665–66 (7th Cir. 2006) (concerning audiotapes of the defendant selling crack cocaine to the confidential informant); *United States v. Hendricks*, 395 F.3d 173, 184 (3d Cir. 2005) ("We thus hold that if a Defendant or his or her coconspirator makes statements as part of a reciprocal and integrated conversation with a government informant who later becomes unavailable for trial, the Confrontation Clause does not bar the introduction of the informant's portions of the conversation as are reasonably required to place the defendant or coconspirator's nontestimonial statements into context."). *But see Roviaro v. United States*, 353 U.S. 53, 64–65 (1957) (discussed below).

Under a narrow interpretation of hearsay and a narrow application of *Crawford*, Newell's statement that the conversations were "consistent with [his] understanding of a drug deal," is distinguishable from cases like *Ocampo*. The jury could not infer specific statements that the informant made, and to the limited extent the jury could infer the substance of the conversations, the informant's statements merely provided context for a party-opponent's admissions. The testimony here was not hearsay.

13

**B. A broader reading of Defendant's argument**

Several concerns remain. Unlike in *Valerio*, *Tolliver*, *Hendricks*, and *Sureff*, Foston and his jury were not permitted to hear or assess the words actually said. Indeed, the fact the jurors could not "readily infer" what out-of-court statements were made meant they were left only with Newell's unambiguous and damning summary of the "nature" of the conversations. As the Ninth Circuit held in *Ocampo*: "With the language actually used by the out-of-court witness obscured, any clues to its truthfulness provided by that language—contradictions, hesitations, and other clues often used to test credibility—are lost, and instead, a veneer of objectivity conveyed." 649 F.3d at 1109. Both Foston and the jury were unable to assess or challenge the reasonableness of Newell's opinion that the conversations were "consistent with" drug deals. Foston was denied the opportunity to "ensure the reliability of the evidence by subjecting it to rigorous testing in the context of an adversary proceeding," which the Supreme Court has called the "central concern of the Confrontation Clause." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). He was also unable to confront "the sole participant, other than the accused, in the transaction[s] charged [and] the only witness who could amplify or contradict the testimony of government witnesses. *Roviaro*, 353 U.S. at 64–65. Finally, he was prevented from exposing the jury to any "relevant and

discrediting information 'revealing . . . ulterior motives of the [informant] as they may relate directly to issues or personalities in the case at hand,' motives that cast doubt on the honesty of the [informant's] testimony." *Murdoch*, 365 F.3d at 792 (citation omitted). These concerns are critical because the officer's vague summary of the conversations went to the heart of the case: whether Foston sold drugs to the confidential informant.

The facts here are similar to those in *Roviaro v. United States*, 353 U.S. 53, which also involved a drug transaction with a confidential informant. In *Roviaro*, one officer hid in the trunk of the informant's car after searching both the informant and the car to ensure there were no narcotics there before the defendant arrived. *Id.* at 55. The officer then listened to the informant's conversation with the defendant, *id.*, and he later related this conversation at trial, *id.* at 64. The Supreme Court held that the trial court committed prejudicial error in permitting the Government to withhold the identity of its informant. *Id.* at 64–65. As in the case at hand, the confidential informant was "the sole participant, other than the accused, in the transaction[s] charged [and] the only witness who could amplify or contradict the testimony of government witnesses." *Id.* Though the Court's analysis focused on the scope of the government's privilege to conceal an informant's identity, the underlying concerns are those underlying the

Confrontation Clause:

> Petitioner's opportunity to cross-examine [the police officers] was hardly a substitute for an opportunity to examine the man who had been nearest to him and took part in the transaction. Doe[, the informant,] had helped to set up the criminal occurrence and had played a prominent part in it. His testimony might have disclosed an entrapment. He might have thrown doubt upon petitioner's identity or on the identity of the package. He was the only witness who might have testified to petitioner's possible lack of knowledge of the contents of the package that he 'transported' from the tree to John Doe's car. The desirability of calling John Doe as a witness, or at least interviewing him in preparation for trial, was a matter for the accused rather than the Government to decide.

*Id.* at 64. *See also United States v. Valenzuela-Bernal*, 458 U.S. 858, 871 (1982) ("While *Roviaro* was not decided on the basis of constitutional claims, its subsequent affirmation in *McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), where both due process and confrontation claims were considered by the Court, suggests that *Roviaro* would not have been decided differently if those claims had actually been called to the Court's attention."); *Gaines v. Hess*, 662 F.2d 1364, 1368 (10th Cir. 1981) ("[D]isclosure of an informant's identity in situations analogous to *Roviaro* is mandated by the Constitution."); *Haider v. Dir. of Corrections*, 992 F. Supp. 1192, 1196 (C.D. Cal. 1998) ("It is well-settled that the government's refusal to disclose the identity of a confidential informant witness does not violate a defendant's rights under the Confrontation Clause of the Sixth Amendment unless the informant's identity is

material to the defendant's defense."); *but see United States v. Johnson*, 866 F.2d 1120, 1122 (9th Cir. 1989) ("The mere suspicion that information will prove helpful is insufficient to require disclosure.").

*Roviaro* and *McCray* are clearly established federal law under 28 U.S.C. § 2254(d)(1) and thus may be the basis for granting a writ of habeas corpus under 28 U.S.C. § 2254(d)(1). However, given the arguments made and the narrow reading typically given the *Crawford* testimonial hearsay test, the broader standard seems inapplicable. That said, reasonable jurists could disagree, and Foston's request for a Certificate of Appealability is therefore granted.

## Conclusion

There is no clear error in Judge Lynch's remaining findings and recommendations.

IT IS HEREBY ORDERED that Judge Lynch's Findings and Recommendation (doc. 36) are ADOPTED, except his recommendation that a Certificate of Appealability be denied on all issues is REJECTED.

IT IS FURTHER ORDERED that the State's motion to dismiss (doc. 22) is GRANTED.

A Certificate of Appealability is GRANTED as to Foston's argument that his rights were violated under the Confrontation Clause of the Sixth Amendment.

The Clerk of Court is directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

Dated this 17th day of July 2012.

/s/ Donald W. Molloy
DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT